STATE OF CONNECTICUT *v.* VINCENT JOSEPH
PALANGIO
(AC 29352)

Flynn, C. J., and Gruendel and Stoughton, Js.

Argued February 2—officially released June 30, 2009

*Glenn W. Falk*, special public defender, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Cynthia S. Serafini*, senior assistant state's attorney, for the appellee (state).

*Opinion*

STOUGHTON, J. The defendant, Vincent Joseph Palangio, appeals from the judgment of conviction, rendered after a jury trial, of the crimes of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a)[1] and 53a-134 (a) (4),[2] and robbery in the first degree as an accessory in violation of General Statutes §§ 53a-8 (a)[3] and 53a-134 (a) (4).[4] He claims on appeal that (1) the evidence was insufficient to convict him of conspiracy to commit robbery in the first degree, (2) the evidence was insufficient to convict him of robbery in the first degree as an accessory, (3) the charge to the jury on robbery in the first degree deprived him of his due process right to a fair trial and (4) the trial court improperly admitted into evidence written statements of an accomplice. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant, although no longer married to

[1] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy.

[2] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery . . . he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver . . . or other firearm . . . ."

[3] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender.

[4] The jury found the defendant not guilty of a charge of possession of drug paraphernalia in violation of General Statutes § 21a-267 (a). The trial court granted the defendant's motion for acquittal of the following charges: one count of possession of narcotics in violation of General Statutes § 21a-279 (a); four counts of risk of injury to a child in violation General Statutes § 53-21 (a) (1); and one count of conspiracy to commit larceny in the fourth degree in violation of General Statutes §§ 53a-48 (a) and 53a-125 (a).

her, was living with Kim Palangio in an apartment in Naugatuck in April, 2006. On the morning of April 23, 2006, Kim Palangio left the apartment to try to get some drugs. She did not succeed, and, on her return, the defendant asked her if she "wanted to make some money." He first suggested that she steal something from Sears. She did not want to do that because she had been caught stealing a tool from Sears a few days earlier. She then suggested that they go to the Citgo gasoline station on New Haven Road in Naugatuck because it was "out of the way." After deciding where to go, the defendant drove Kim Palangio in her car and let her out at the Citgo station. Wearing black jeans, a black hoodie jacket, gloves and a baseball hat, she put her hood up over her head and entered the Citgo station. She removed a gallon of milk from the cooler and took it to the counter. She then ordered a carton of cigarettes from the clerk behind the counter, and, when the clerk turned away, she took a black BB gun shaped like a handgun from under her hooded jacket, placed it on the counter and demanded money. The clerk gave her the money from the register, and she walked out and down the street where the defendant picked her up. The stolen money amounted to $520, and as she was counting it, the defendant drove to Waterbury so they could buy drugs. They then returned to the apartment where Kim Palangio put the BB gun in her dresser drawer and changed out of her clothes. She put her black jeans in her closet and gave to the defendant her black hoodie jacket, gloves and baseball hat because he wanted to get rid of them.

The police reviewed a video surveillance tape of the robbery and recognized Kim Palangio. They went to the apartment, and, as they entered, the defendant said, "I didn't do it." The police found the BB gun and the cigarettes and the gallon of milk, which had been taken from the Citgo station. They arrested Kim Palangio, and

she gave a statement in which she explained how she and the defendant had robbed the Citgo station. Additional facts will be set forth as necessary.

I

We first consider the defendant's claim that the court abused its discretion in admitting into evidence for substantive purposes under the rule enunciated in *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), two statements given to the police by Kim Palangio. Because the state's case against the defendant was almost entirely dependent on these statements, resolution of this claim in favor of the defendant would be dispositive. For the reasons we will set forth, we determine that the court did not abuse its discretion in admitting the statements.

On April 23, 2006, after having been arrested and properly given *Miranda* warnings,[5] Kim Palangio gave a statement to the police in which she described how she and the defendant had robbed the Citgo station. On the same date, she gave a second statement to a different policeman in which she described how a few days before the Citgo robbery she and the defendant, needing some money, went to a 7-Eleven store in Waterbury, which she entered and robbed by representing that she had a gun in her pocket.

At the defendant's trial, the state called Kim Palangio as a witness. Although she had pleaded guilty to the robberies about which she had given statements, she testified that she could not remember the details or who had driven her to the Citgo robbery. Kim Palangio's statement regarding the Citgo robbery was admitted as substantive evidence pursuant to the rule in *Whelan*. Under *Whelan*, a prior inconsistent statement may be

---

[5] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

admitted into evidence for substantive purposes where (1) the statement is in writing, (2) the statement is signed by the declarant, (3) the declarant has personal knowledge of the facts contained therein and (4) the declarant testifies at trial and is subject to cross-examination. Id., 753.

During the trial, Kim Palangio was questioned about the 7-Eleven robbery to rebut a claim that the defendant did not know that she was going to commit a robbery. She admitted that the defendant drove her to the 7-Eleven store and that she had used a BB gun in the robbery but claimed that the defendant did not know that she had a gun and that she was unable to remember many of the details of the robbery. Thereafter, her statement to the police regarding the 7-Eleven robbery was admitted as substantive evidence pursuant to *Whelan*.[6]

The admissibility of evidence, including admissibility of a prior inconsistent statement under the rule in *Whelan*, is within the wide discretion of the trial court. *State* v. *Anderson*, 74 Conn. App. 633, 645, 813 A.2d 1039, cert. denied, 263 Conn. 901, 819 A.2d 837 (2003). If such a statement is made under circumstances so unduly coercive or extreme as to grievously undermine the reliability generally inherent in it so as to render it, in effect, not that of the witness, the trial court must act as a gatekeeper to ensure that the statement does not go to the jury for substantive purposes. *State* v. *Mukhtaar*, 253 Conn. 280, 306, 750 A.2d 1059 (2000).

The defendant does not claim that the requirements of the rule in *Whelan* have not been met. His claim is that the statements made to the police by Kim Palangio

---

[6] In her statement about the 7-Eleven robbery, Kim Palangio explained that the defendant drove her to the 7-Eleven in her car, dropped her off at the store and then waited for her "around the corner." Once she returned to the car, they went to buy drugs.

were unreliable because she had been under the influence of drugs when she gave them. Kim Palangio testified that when she gave her statements, she had been up four or five days getting high and that she had used heroin, methadone and pills. She was taken to Waterbury Hospital after she had given her statements, and the hospital records confirmed that she had been using drugs. On the other hand, the police officers who had interviewed Kim Palangio testified that she was lucid and coherent and did not appear to be under the influence of drugs. The court found that the statements had sufficient indications of reliability and that the testimony by the police officers who took the statements, which was that she was lucid and coherent, was credible. Accordingly, we conclude that the court did not abuse its discretion in admitting the statements into evidence.

II

The defendant next claims that the evidence was insufficient to support a finding that he had conspired to commit robbery in the first degree with a handgun. We disagree.

In reviewing such a claim, we first construe the evidence in the light most favorable to sustaining the verdict. *State* v. *Anderson,* supra, 74 Conn. App. 636. We then determine whether, on the facts so construed and inferences reasonably drawn therefrom, the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. Id. "[P]roof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable

view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Na'im B.*, 288 Conn. 290, 297, 952 A.2d 755 (2008).

To establish the crime of conspiracy, it must be shown that an agreement was made to engage in conduct constituting a crime, that the conspirators intended that the conduct be performed and that the agreement was followed by an overt act in furtherance of the conspiracy. *State* v. *Patterson*, 276 Conn. 452, 461–62, 886 A.2d 777 (2005). "Conspiracy is a specific intent crime, with the intent divided into two elements: (a) the intent to conspire and (b) the intent to commit the offense which is the object of the conspiracy. . . . Thus, [p]roof of a conspiracy to commit a specific offense requires proof that the conspirators intended to bring about the elements of the conspired offense." (Citation omitted; internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 167, 869 A.2d 192 (2005).

The conspired offense in this case was robbery in the first degree, which is defined in § 53a-134 (a) (4),[7] inter alia, as a robbery during the course of which a participant displays a pistol, revolver, or other firearm. The state was thus required to prove that the defendant and another agreed to commit robbery, intended to commit robbery with a firearm and that one of the conspirators committed an overt act in furtherance of the conspiracy.

We do not agree with the state's contention that it was not required to prove that the defendant knew that Kim Palangio was going to use a firearm during the robbery. The state reasons that because a defendant charged with robbery in the first degree on the ground

---

[7] See footnote 2.

that he or another participant in the crime is armed need not be proven to have intended to possess a deadly weapon; see *State* v. *Crosswell*, 223 Conn. 243, 261 n.14, 612 A.2d 1174 (1992); and because a defendant charged as an accessory to robbery in the first degree need not be proven to have intended to possess a deadly weapon; see *State* v. *Avila*, 223 Conn. 595, 609, 613 A.2d 731 (1992); the same is true when the defendant is charged with conspiracy to commit robbery in the first degree. That is so, except as to the conspiracy charge, because under § 53a-134, possession of a firearm is an aggravating circumstance and intent is not an element of the aggravating circumstance. See *State* v. *Crosswell*, supra, 258 n.11. The difference here lies in the fact that the defendant is charged specifically with having agreed to commit a robbery with a firearm. A fortiori, the state must prove that the defendant intended that a robbery with a firearm take place.

There was no direct evidence presented to the jury that the defendant knew that Kim Palangio had a gun when she entered the Citgo station. Indeed, the defendant denied any involvement in the robbery, and Kim Palangio testified that she did not remember the details of the Citgo robbery, including the defendant's involvement in the robbery, and that as to the 7-Eleven robbery, the defendant would not have let her commit an armed robbery. On the other hand, the jury knew that the defendant and Kim Palangio lived together, that they needed money for drugs and that they went to the Citgo station "to make some money."[8] In addition, the jury knew that the two, shortly before the Citgo robbery, had robbed a 7-Eleven store in substantially the same way and that Kim Palangio had come out of the store with money, which they had used to buy drugs.

---

[8] Although the defendant's first suggestion was that Kim Palangio steal something from Sears, it is difficult to imagine what she could steal from a Citgo gasoline station, other than money, which they could use to buy drugs.

Furthermore, a compact disc (CD) containing three taped jailhouse telephone conversations[9] was admitted as a full exhibit and played to the jury.[10] In two of the conversations, Kim Palangio expressed concern to Maurice Sampson, a witness for the defense, that she might be punished for lying when she said that the defendant did not know that she had a gun. The first of the two conversations occurred on March 29, 2007, approximately three months before trial. See footnote 9. During this conversation, the following colloquy took place:

"Kim Palangio: Oh. . . . A [private investigator] came to see me, right. And, I told [the defendant's] sister . . . that I will tell them [the defendant] didn't have a gun. You know, I'll do whatever I can to help him. Well, the [private investigator] . . . says to me that [the defendant] said that I would say that [the

[9] The defendant's trial began on June 20, 2007. The first two conversations recorded on March 29 and June 16, 2007, therefore, occurred before the trial had started, and the third conversation recorded on June 23, 2007, occurred after the trial had commenced.

[10] After the defense had rested, the state moved for permission to present additional evidence, pursuant to Practice Book § 42-35 (3). The jury was excused, and the state offered the CD containing a recording of the three jailhouse conversations. Because the first of the three conversations occurred several months before the start of the defendant's trial; see footnote 9; the defendant objected, arguing that in the exercise of due diligence, the state ought to have discovered it prior to the trial. The court overruled this objection after it entertained argument on the matter. The defendant then objected, asserting that, because he had not heard a "beeping sound" on the CD, the announcement at the beginning of the telephone call, explaining that the call was from a correctional facility and may be recorded, might not be sufficient to warn the recipient of the call that the call may be recorded. This objection was overruled. The court then stated that it would allow the state to open its case because the evidence significantly contradicted the testimony of Kim Palangio, a hostile witness, and that it went right to the heart of her credibility and to the heart of the state's case. After the jury returned, the state offered the three recorded jailhouse conversations, and the CD containing the conversations was admitted as a full exhibit without objection. On appeal, the defendant does not challenge the court's ruling on the admissibility of the recorded conversations.

defendant] wasn't even driving [the car used in the Citgo robbery], that this kid Paul was, who I was partying with—Paul. He wants me to blame it on [Paul]. [Paul] didn't even know I did [the Citgo robbery]. Can you believe that? I was like, that son of a B. I said, 'you know what, [the defendant] brought me [to the Citgo robbery].' I said, 'I'm not going to lie that much.' You know what I'm saying? If I got to go to trial, you know, go on [the witness] stand, I'll get—I can get more time for that. I said, 'you know, for all I know he didn't know I had a gun,' and that's the only thing I signed. I mean, he wants me to say all kinds of . . . . I wrote to [the defendant's sister] and said, you better talk to your brother because he's lying completely, and if he gets—goes to trial, and—

"Sampson:—gets caught lying it will be worse.

"Kim Palangio: Yeah. If he gets caught—found guilty, they'll give him like big time.

"Sampson: Yeah.

"Kim Palangio: He doesn't understand that. He thinks—he's just, you know, 'I didn't do it,' and that's it. I mean, there's proof, you know. As soon as the cops walked in the house, he said, 'I didn't do it,' so they knew that he—you know what I'm saying—

"Sampson: Yeah.

"Kim Palangio: They knew something. He's so stupid, man. I can't believe it."

The second of the two conversations occurred on Saturday, June 23, 2006, one day after both Kim Palangio and Sampson testified at the defendant's trial. During this conversation, the following colloquy took place:

"Kim Palangio: I'm going to kill [the defendant], he's such an asshole.

"Sampson: Why?

"Kim Palangio: Because I can get in so much trouble for that. I can get more time for that.

"Sampson: For what?

"Kim Palangio: For lying.

"Sampson: What did you say?

"Kim Palangio: I said, 'I don't remember nothing.' I said, 'I don't think [the defendant]—[the defendant] didn't know I had a gun . . . .' "

The recorded conversations were not offered or admitted solely to attack the credibility of Kim Palangio, but as evidence in chief, and no hearsay objections were interposed when the conversations were offered in the presence of the jury. Moreover, the court did not limit the use of the recorded conversations in its instructions to the jury. Thus, the recorded statements were available to the jury for substantive purposes.

The jury members may draw from the evidence only such inferences as are reasonable, but they are not required to put aside their common sense. *State* v. *Mish*, 110 Conn. App. 245, 263, 954 A.2d 854, cert. denied, 289 Conn. 941, 959 A.2d 1008 (2008). The jury reasonably could infer from Kim Palangio's statements that she had lied when she testified that she did not recall the details of the Citgo robbery. In addition, although Kim Palangio did not state directly that the defendant knew that she had a gun, the jury could infer that she knew that the defendant was aware of the fact that she had a BB gun when she committed the robberies. This conclusion is buttressed by the fact that the defendant and Kim Palangio lived together, had previously robbed a 7-Eleven store in a similar manner, needed money for drugs and had gone to the Citgo gasoline station to get some money and that Kim Palangio told the police that

they robbed the station. We therefore conclude that there was sufficient evidence for the jury to find the defendant guilty of conspiracy to commit robbery in the first degree.

## III

Next, the defendant asserts that the court failed to instruct the jury that conspiracy to commit robbery in the first degree must include an agreement between the conspirators to accomplish all elements of the crime, including the use of the BB gun. We disagree.

The defendant did not object to the charge and now seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[11] We review this claim even though the defendant did not object to the charge because the record is adequate for review and the failure to instruct the jury adequately on an essential element of the crime charged necessarily involves the defendant's due process rights and implicates the fairness of the trial. See *State* v. *Felder*, 95 Conn. App. 248, 257–58, 897 A.2d 614, cert. denied, 279 Conn. 905, 901 A.2d 1226 (2006). One of the elements of robbery in the first degree is that a participant in the crime displayed or threatened the use of what he represented to be a pistol, revolver or other firearm. See General Statutes § 53a-134 (a) (4); footnote 2. Therefore, the court was required to instruct the jury that to find the defendant guilty as charged, the state had to prove beyond a reasonable doubt, inter alia, that he agreed to the use of

[11] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

a firearm and intended that what purported to be a firearm be used in the robbery.

We adhere to the rule that a charge to the jury is to be considered in its entirety and judged by its total effect. *State* v. *Pearson*, 97 Conn. App. 414, 424, 904 A.2d 1259, cert. denied, 280 Conn. 934, 909 A.2d 963 (2006). With respect to an unpreserved claim, we ask whether it was reasonably possible that the jury was misled. See *State* v. *Michael A.*, 99 Conn. App. 251, 264, 913 A.2d 1081 (2007).

The defendant isolates two statements from the charge, which he claims were incorrect and misleading. The first of these occurred near the latter part of the court's explanation of the first element of the conspiracy charge. The court explained that the state was required to prove that the defendant intended that conduct constituting a crime be performed, specifically, the crime of robbery in the first degree. The court then explained that one is guilty of robbery in the first degree when, in the course of the robbery, he or another participant displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver or other firearm. The court then defined robbery and instructed the jury that a robbery becomes a robbery in the first degree when in the course of the robbery the perpetrator or another participant displays or threatens the use of what he or the other participant represents by words or conduct to be a pistol, revolver or other firearm.

The court, at the end of this segment of its charge, instructed that, with respect to this element, the defendant must be proven to have been actuated by criminal intent. It added the following language, which the defendant claims is incorrect: "It's not necessary, however, that the defendant intended to commit robbery in the first degree; it's only necessary that he intended that certain conduct be performed or take place, which, if

performed, would constitute the crime of robbery in the first degree." Although that language appears in D. Borden & L. Orland, 5 Connecticut Practice Series: Criminal Jury Instructions (4th Ed. 2007) § 5.1, p. 334, it is perhaps more appropriately placed early in the charge on what constitutes conspiracy and before the specific charge is defined. Although standing alone it might cause some degree of confusion, it correctly states that the defendant does not have to intend to commit the robbery himself, and it followed the court's instruction that the defendant had to intend that a robbery in the first degree be performed and that the use or threatened use of what seemed to be a pistol, revolver or other firearm was required. In the context of the complete charge it is not reasonably possible that the statement misled the jury. As stated previously, the court adequately explained that the state was required to prove that the defendant intended that conduct constituting robbery in the first degree be performed, that one is guilty of robbery in the first degree if, during the course of the robbery, he or another participant displays or threatens the use of what he represents by words or conduct to be a pistol, revolver or other firearm and that a robbery becomes a robbery in the first degree when, in the course of the robbery, he or another participant displays or threatens the use of what he or the other participant represents by words or conduct to be a pistol, revolver or other firearm.

The second statement claimed to be incorrect and misleading occurred while the court explained that the second element of the crime of conspiracy to be proven by the state was that the defendant agreed with one or more persons, including Kim Palangio, to engage in or to cause the performance of conduct that constituted the crime of robbery in the first degree. The court explained that no formal agreement was required and that it was sufficient to show that the persons involved

were knowingly engaged in a mutual plan to do a forbidden act. The court then added the following language, which the defendant claims is incorrect and misleading: "It's not necessary that the defendant knew the complete plan of the conspiracy and all its details." The court went on to charge that mere acquiescence without agreement is not sufficient and that the defendant must be shown to have actually entered into the agreement, express or implied, to commit or to cause the commission of the crime of robbery in the first degree. The language of which the defendant complains is found in the model charge in D. Borden & L. Orland, supra, p. 334, although it does not seem to be relevant to the claims of proof in this case. The court almost immediately explained that the defendant must be shown to have agreed to the commission of robbery in the first degree. Whether the state was able to meet its burden of proof in that respect was a question for the jury. Considered in context, it is not reasonably possible that the jury was misled by this statement.

Our review of the charge reveals that the court adequately instructed the jury that the state specifically had to prove: (1) that the defendant intended that a robbery in the first degree occur, which is robbery with a pistol, revolver or other firearm; (2) that the defendant must be shown to have actually entered into the agreement to commit or to cause the commission of the crime of robbery in the first degree; and (3) an overt act, to wit, the actual robbery, occurred. The claim of confusion, based principally on two sentences taken out of context in the charge as given in this case, is not sufficient to establish a constitutional claim. See *State* v. *McCalpine*, 190 Conn. 822, 831, 463 A.2d 545 (1983). We conclude that the jury instructions regarding the conspiracy charge were proper.

IV

The defendant also claims that the evidence was insufficient to support his conviction of robbery in the

first degree as an accessory. He claims, as he did with respect to the conspiracy charge, that the state was required to prove that he was aware that his accomplice intended to use a weapon in the commission of the robbery. We do not agree and observe that this claim is foreclosed by *State* v. *Avila,* supra, 223 Conn. 608–609 (holding that jury need not find defendant aware that another participant in crime armed with deadly weapon to find defendant guilty of robbery in first degree as accessory).

The judgment is affirmed.

In this opinion the other judges concurred.