### STATE OF CONNECTICUT *v.* HERIBERTO LUIS GUZMAN
### (AC 30604)

Beach, Robinson and Mihalakos, Js.

---

Argued September 17—officially released November 30, 2010

*Mary Beattie Schairer*, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *David R. Shannon*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Heriberto Luis Guzman, appeals from the judgment of conviction, rendered after a jury trial, of one count of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a) (1), one count of conspiracy to commit assault in the first degree in violation of

General Statutes §§ 53a-48 and 53a-59 (a) (4), one count of assault in the first degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-59 (a) (5), two counts of assault in the first degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-59 (a) (1), three counts of assault in the first degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-59 (a) (4) and one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (5).[1] On appeal, the defendant claims that the trial court erred when it (1) instructed the jury regarding the element of general intent and (2) convicted him of two counts of conspiracy arising out of a single agreement in violation of the constitutional prohibition against double jeopardy. We affirm in part and reverse in part the judgment of the trial court.

The jury reasonably could have found the following facts. The charges at issue in this case arose from an altercation that occurred on August 2, 2004, at 11:30 p.m. at an outdoor basketball[2] court at the Eden Drive housing complex in Danbury. Approximately one week before the altercation occurred, Rudy Ortiz believed that one or more of the victims in this case had struck him over the head with a bottle. In an attempt to exact retribution, on the afternoon of August 2, 2004, Ortiz orchestrated a plan in which several of his friends and relatives, including the defendant, would ambush and attack the victims at the Eden Drive basketball court. Ortiz solicited the help of some female friends to entice the victims to come to the basketball court under the guise of a party.

Later that same night, Ortiz and approximately twenty of his friends and relatives positioned themselves in locations surrounding the basketball court in

[1] The defendant also was charged with but found not guilty of one count of assault in the first degree in violation of § 53a-59 (a) (1).

[2] The basketball court was surrounded by a chain-link fence with only one opening for ingress and egress.

a manner conducive to execute the ambush. At approximately 11:15 p.m., the five victims, Herbie Servil, Kenny Poteau, Clifford Cernilion, Stanley Bruno and Keven Louis, arrived outside of the basketball court and were greeted by the female friends whom Ortiz had solicited for help. The females escorted the five victims onto the enclosed basketball court, and they all began socializing.

Pursuant to Ortiz' plan, two of his friends, Juan Macias and Ulises Collazo, approached Louis and asked him for "a light . . . ." Immediately thereafter, Macias struck Louis in the face, and Collazo began attacking one of the other victims. A large brawl then ensued in which Ortiz, the defendant, and several of Ortiz' friends and relatives stormed into the basketball court and began attacking the victims, who were now trapped inside the basketball court. Upon entering the basketball court, the defendant approached Louis and shot him twice. The defendant then approached one of the victims who was attempting to climb over the fence and stabbed him multiple times in the back. A short time later, the attacks ended, and the assailants all ran out of the basketball court area and left the vicinity.

As a result of the attack, the victims suffered serious injuries. Louis, who was shot twice, remained in a hospital for approximately two months. Louis' injuries required him to use a colostomy bag for six months, and a metal rod had to be inserted in his right hip, which extended down to his right knee. Bruno sustained twelve separate lacerations and a liver injury that did not require surgery. Servil suffered a penetrating injury to his back[3] that resulted in a collapsed lung.

On April 18, 2008, the jury found the defendant guilty of nine of the ten counts with which he was charged.

---

[3] The examining doctor was unable to ascertain whether the penetrating injury was a gunshot or stab wound.

On June 6, 2008, the court sentenced the defendant to a total effective term of twenty-nine years incarceration, ten of which were a mandatory minimum. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the trial court erred when it instructed the jury regarding both specific intent and general intent because all of the crimes with which he was charged required a mens rea of specific intent.[4] The defendant argues that the court's instruction on general intent misled the jury into believing that he could be found guilty of the crimes charged if he merely had the intent to engage in the prohibited conduct without determining that he specifically intended to cause serious physical injury. The state contends that the jury was instructed properly and could not have been misled because the court clearly set out the specific intent element for each crime charged. We agree with the state.

The following additional facts are relevant to our resolution of the defendant's claim. On April 17, 2008, before the completion of evidence, the court held a charging conference on the record. At the conference, the court indicated that the parties had met earlier in the morning to discuss the charge. The court mentioned that some mistakes were made in the charge, in that

[4] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or dangerous instrument . . . or (4) with intent to cause serious physical injury to another person and while aided by two or more other persons actually present, he causes such injury to such person or to a third person; or (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm." See *State* v. *Torrice*, 20 Conn. App. 75, 95, 564 A.2d 330 (stating that "assault . . . require[s] specific intent to cause injury"), cert. denied, 213 Conn. 809, 568 A.2d 794 (1989).

victims and counts were mismatched, and that a new version was being made to fix the problem. When asked if either party had any comments regarding the charge, the state expressed that it did not. The defendant stated that, with the exception of one request to charge regarding reasonable doubt, which the court declined to give, he was satisfied with the court's charge. The defendant also stated that he would take exception to the instruction on reasonable doubt when it was given. The court again asked if either party had any other objection to the charge, and both parties stated that they did not.

Prior to instructing the jury as to each particular count of the information, the court instructed the jury as to the concept of intent generally. The court stated: "Intent relates to the condition of mind of the person who commits the act; his purpose in doing it. As defined by our statute, a person acts intentionally with respect to a result when his conscious objective is to cause the result. A person acts intentionally with respect to conduct when his conscious objective is to engage in such conduct." Throughout the remainder of the jury instructions, the court referred the jury back to this definition of intent on three occasions.

Following the instruction on intent generally, the court instructed the jury on the elements of each offense with which the defendant was charged. With respect to the intent element of assault in the first degree under § 53a-59 (a) (1), as charged in counts one, four, six and nine,[5] the court instructed the jury that it needed to find that "the defendant intended to cause serious physical injury to another person" to have the requisite intent required by the statute. In summarizing the elements

[5] Count one charged the defendant with conspiracy to commit assault in the first degree in violation of §§ 53a-48 and 53a-59 (a) (1), counts four and six charged the defendant with assault in the first degree as an accessory in violation of §§ 53a-8 and 53a-59 (a) (1), and count nine charged the defendant with assault in the first degree in violation of § 53a-59 (a) (1).

of assault under § 53a-59 (a) (1), the court stated that "the state must prove beyond a reasonable doubt that the defendant had the specific intent to cause serious physical injury to [another]."

With respect to the intent element of assault in the first degree under § 53a-59 (a) (4), as charged in counts two, five, seven and eight,[6] the court again instructed the jury that it needed to find that the defendant had the "intent to cause serious physical injury to another person" to have the requisite intent required by the statute. In summarizing the elements of assault under § 53a-59 (a) (4), the court stated that "the state must prove beyond a reasonable doubt that the defendant had the specific intent to cause serious physical injury to [another]."

Finally, with respect to the intent element of assault in the first degree under § 53a-59 (a) (5), as charged in counts three and ten,[7] the court informed the jury that a person is guilty of this offense "when, with the intent to cause physical injury to another person, he causes such injury . . . by means of the discharge of a firearm." Again, when summarizing the elements of assault under § 53a-59 (a) (5), the court stated that "the state must prove beyond a reasonable doubt that the defendant had the specific intent to cause physical injury to [another]." After the jury was instructed, the defendant said he had no objections to the instructions except for his reasonable doubt charge that the court declined to give.

The defendant did not properly preserve this claim and seeks review pursuant to *State* v. *Golding*, 213

---

[6] Count two charged the defendant with conspiracy to commit assault in the first degree in violation of §§ 53a-48 and 53a-59 (a) (4), and counts five, seven and eight charged the defendant with assault in the first degree as an accessory in violation of §§ 53a-8 and 53a-59 (a) (4).

[7] Count three charged the defendant with assault in the first degree as an accessory in violation of §§ 53a-8 and 53a-59 (a) (5), and count ten charged the defendant with assault in the first degree in violation of § 53a-59 (a) (5).

Conn. 233, 239–40, 567 A.2d 823 (1989).[8] The defendant's claim satisfies the first two prongs of *Golding* because the record is adequate for review, and "[a]n improper instruction on an element of an offense . . . is of constitutional dimension." (Internal quotation marks omitted.) *State* v. *Austin*, 244 Conn. 226, 235, 710 A.2d 732 (1998). The defendant's claim, however, fails under the third prong of *Golding*[9] because there was no clear constitutional violation, and the court's instructions did not deprive him of a fair trial.

We begin our consideration of the defendant's claim by setting forth the standard of review. "[I]ndividual

---

[8] Pursuant to *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[9] The state contends that the defendant's claim fails under the third prong of *Golding* because he waived his claim on appeal by expressing to the court that he was content with the jury instructions. The law regarding waiver of jury instruction challenges is less than clear. In *State* v. *Cox*, 293 Conn. 234, 977 A.2d 614 (2009), our Supreme Court stated that "[w]aiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Internal quotation marks omitted.) Id., 245. In *State* v. *Ebron*, 292 Conn. 656, 681–82, 975 A.2d 17 (2009), however, it stated that "although the defendant acquiesced in the charge that the trial court ultimately gave to the jury . . . there is no indication that the defendant actively induced the trial court to give the retreat instruction that he now challenges on appeal, which renders this claim reviewable under *Golding*."

The Supreme Court currently has several certified appeals before it in which it may address the issue of waiver of instructional errors. See *State* v. *Paige*, 294 Conn. 911, 983 A.2d 275 (2009); *State* v. *Baptiste*, 294 Conn. 910, 983 A.2d 274 (2009); *State* v. *Mungroo*, 291 Conn. 907, 969 A.2d 172 (2009); *State* v. *Akande*, 290 Conn. 918, 966 A.2d 237 (2009). In these circumstances, we decline to address the state's waiver claim. In any event there was no constitutional violation.

jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Citation omitted; internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 360–61, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005).

Our Supreme Court has decided a number of cases that have comparable factual circumstances and address the defendant's claim. In *State* v. *Montanez*, 277 Conn. 735, 742, 894 A.2d 928 (2006), *State* v. *DeJesus*, 260 Conn. 466, 471–72, 797 A.2d 1101 (2002), and *State* v. *Austin*, supra, 244 Conn. 232, the trial courts mentioned in their instructions both specific intent and general intent, although the crimes with which the defendants were charged warranted only an instruction regarding specific intent. In each case, our Supreme Court held that the trial court's repeated instruction that specific intent was an element of the crime charged eliminated any possibility that the jurors reasonably could have mistakenly believed that the defendant could properly have been found guilty based on a finding of only general intent. *State* v. *Montanez*, supra, 745 ("trial court . . . unmistakably described

the defendant's specific intent as an element of the crimes with which he was charged"); *State* v. *DeJesus*, supra, 476–77 ("[t]his repeated instruction [on specific intent] eliminated any possibility of juror confusion with respect to the element of intent"); *State* v. *Austin*, supra, 236 ("any possible risk of jury confusion over the element of intent was eliminated by the . . . court's numerous proper instructions on the elements of [the crimes charged]").

In the present case, when instructing the jury on the intent element of assault, the court repeatedly stated that the defendant must have "intended to cause serious physical injury to another person." The court repeated this phrase to the jury approximately twenty times throughout its instructions. Additionally, the court instructed the jury that "the state must prove beyond a reasonable doubt that the defendant had the specific intent to cause serious physical injury . . . ." The court used the term "specific intent" seven times throughout its jury instructions. The court unmistakably conveyed to the jury that specific intent was an element of the assault charges against the defendant. "It strains reason to believe that the jury could have heard the challenged instruction as not requiring that the state prove beyond a reasonable doubt that the defendant intended" to cause serious physical injury. (Internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 322, 664 A.2d 743 (1995).

The defendant attempts to overcome these precedents by analogizing his case to *State* v. *DeBarros*, 58 Conn. App. 673, 682–84, 755 A.2d 303, cert. denied, 254 Conn. 931, 761 A.2d 756 (2000), in which this court held that the trial court erred by instructing the jury regarding general intent and specific intent although the defendant was charged only with specific intent crimes. We distinguished *DeBarros* from *Austin* and *Prioleau* on two grounds. First, we concluded that the

trial court's ten references to general intent "were too numerous to be rectified by the court's proper instructions." Id., 683. Second, the courts in *Austin* and *Prioleau* read the improper instruction only as part of a general definition of intent whereas in *DeBarros*, "the court read the instruction as a specific definition of the intent required for the crimes charged." Id.

The defendant's reliance on *DeBarros*, however, is flawed. First, as we stated previously, the court repeatedly instructed the jury that specific intent was an element of the defendant's assault charges and merely mentioned general intent only as part of its general introductory definition of intent. Second, as our Supreme Court stated in *Montanez*, "a challenged jury charge is to be read as a whole . . . and judged by its total effect rather than by its individual component parts." (Internal quotation marks omitted.) *State* v. *Montanez*, supra, 277 Conn. 746. The fact that the trial court read the full statutory definition of both general and specific intent once in its initial charge and referred back to it only three times did not mislead the jury, especially since the court repeatedly instructed the jury regarding specific intent in the context of explaining the elements of each specific crime. Indeed, the initial reference to both general and specific intent may have highlighted the differences between them, such that the jury was more likely to understand the meaning of specific intent. Accordingly, we reject the defendant's claim.

The defendant also seeks reversal under the plain error doctrine. "The plain error doctrine is based on Practice Book § 60-5, which provides in relevant part: The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . . The plain error doctrine is reserved

for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under [the] plain error [doctrine] unless [he] has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Britton*, 283 Conn. 598, 617, 929 A.2d 312 (2007). As we stated previously, the trial court repeatedly instructed the jury as to the correct intent required under § 53a-59 (a). Accordingly, there is no manifest injustice that warrants reversal pursuant to the plain error doctrine.

The defendant also asks this court to exercise its supervisory powers and to review this issue in the interest of judicial economy. "[O]ur supervisory authority is not a form of free-floating justice, untethered to legal principle. . . . Our supervisory powers are not a last bastion of hope for every untenable appeal. They are an *extraordinary* remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Hines*, 243 Conn. 796, 814–15, 709 A.2d 522 (1998). This case by no means presents the type of extraordinary circumstances for which our supervisory powers are reserved. Accordingly, we decline to exercise our supervisory powers.

II

The defendant's second and final claim is that the trial court erred when it convicted him of two counts of conspiracy arising out of a single agreement. The defendant argues that his rights under the double jeopardy clause were violated because he was convicted of

two counts of conspiracy that arose from the same set of facts and was sentenced separately for each. The state agrees that the defendant's double jeopardy rights were violated. We also agree.

In this case, the defendant was convicted of two counts of conspiracy. The defendant received a sentence of ten years imprisonment for his conviction of conspiracy to commit assault in the first degree in violation of §§ 53a-48 and 53a-59 (a) (1), which was to be served consecutively to the nineteen year sentence imposed for his conviction of assault in the first degree as an accessory in violation of §§ 53a-8 and 53a-59 (a) (1). The defendant also received a sentence of eighteen years imprisonment for his conviction of conspiracy to commit assault in the first degree in violation of §§ 53a-48 and 53a-59 (a) (4), which was to be served concurrently with the nineteen year sentence imposed for his conviction of assault in the first degree as an accessory in violation of §§ 53a-8 and 53a-59 (a) (1).

"The standard of review to determine whether the defendant's constitutional right against double jeopardy was violated is de novo because it is a question of law. . . . The factual findings of the court that determines that issue, however, will stand unless they are clearly erroneous." (Citation omitted.) *State* v. *Ellison*, 79 Conn. App. 591, 598, 830 A.2d 812, cert. denied, 267 Conn. 901, 838 A.2d 211 (2003).

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . . The traditional test for determining whether two offenses are the same offense for double jeopardy purposes was set forth in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct.

180, 76 L. Ed. 306 (1932). [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (Internal quotation marks omitted.) *State* v. *Nelson*, 118 Conn. App. 831, 853, 986 A.2d 311, cert. denied, 295 Conn. 911, 989 A.2d 1074 (2010).

"A conspiracy to commit multiple offenses is, itself, a single offense. . . . The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute . . . . For such a violation, only the single penalty prescribed by the statute can be imposed. . . . [When] the facts point to only one agreement, the defendant cannot be subject to sentencing for two conspiracies. . . . Multiple, albeit concurrent, sentences are not proper and cannot stand . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Cator*, 256 Conn. 785, 808, 781 A.2d 285 (2001).

Here, the defendant's conviction and sentences for conspiracy to commit assault in the first degree in violation of §§ 53a-48 and 53a-59 (a) (1) and conspiracy to commit assault in the first degree in violation of §§ 53a-48 and 53a-59 (a) (4) are supported by evidence of only one agreement. The single agreement was to ambush the victims and to inflict serious physical injury on them by means of a deadly or dangerous instrument and while aided by three or more persons actually present at the basketball court. Accordingly, the defendant's conviction and sentences for both conspiracy charges violated his right to be free from double jeopardy. Therefore, we direct the trial court on remand to merge the conviction on the two conspiracy counts and to vacate the sentence for one of them. See id.

The judgment is reversed only as to the conviction on the two conspiracy counts and the case is remanded

with direction to merge the conviction on those counts and to vacate the sentence on one of them. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.