******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* SANJAE THAJ MENDEZ
(AC 35126)

Gruendel, Lavine and Flynn, Js.

*Argued September 15—officially released December 23, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Thim, J.)

*Richard E. Condon*, *Jr.*, senior assistant public
defender, for the appellant (defendant).

*Brian W. DeBlasiis*, certified legal intern, with whom
were *Bruce R. Lockwood*, senior assistant state's attor-
ney, and, on the brief, *John C. Smriga*, state's attorney,
and *Joseph J. Harry*, senior assistant state's attorney,

for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Sanjae Thaj Mendez, appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (1) and 53a-48, and conspiracy to commit larceny in the second degree in violation of General Statutes §§ 53a-119, 53a-123a (3), and 53a-48.[1] On appeal, the defendant claims that the evidence was insufficient to convict him of conspiracy to commit robbery in the first degree. We affirm in part and reverse in part the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On March 13, 2011, Jose Mota, a Fairfield University student, held a party at his on-campus townhouse. The victim, Montovani Joaquin, attended the party with his cousin. The defendant arrived at Mota's party with several other people including Axel Lee. Lee drove the defendant to the Fairfield University campus in his black Mazda. While at the party, the victim noticed the defendant inside the townhouse.

When the party ended at approximately 5 a.m., the victim left the townhouse and saw the defendant standing outside with a group of people. When the victim passed by the defendant, he felt something strike the back of his head and immediately turned around and saw Lee standing behind him. The victim began "fighting" with Lee when he felt someone approach him from the left. As the victim turned to the left, the defendant punched him directly in the jaw. The victim fell to the ground and felt someone "yank" his gold and silver chain from his neck. The victim then saw three people, including the defendant, run toward a black Mazda, which prompted him to chase after them. The victim saw the defendant getting into the passenger seat of the car. In an attempt to stop them, the victim grabbed onto the hood and then the rear bumper of the black Mazda, leaving blood stains on the Mazda before the car pulled away. As the Mazda drove away, Mota heard people screaming. He went outside and found the victim on the ground bleeding. Mota ran to pick up the victim; he saw that the victim's jaw appeared to be dislocated, he was missing teeth, and was no longer wearing his gold and silver chain.

Fairfield University Public Safety Officer Bruno Morias was working the midnight to 8 a.m. shift when a man stopped him to report that individuals in a black Mazda had assaulted the victim and stole his chain. Morias subsequently spotted the black Mazda on campus and initiated a motor vehicle stop along with two Public Safety Officers, Edward Baclawski and Filipe Rodriquez. Morias identified the driver as Lee and the passenger in the right rear seat as the defendant. When

the victim arrived at the scene of the motor vehicle stop, Rodriquez asked him who assaulted him. The victim pointed to the defendant while making punching motions to his jaw and "yanking towards his neck area." Morias then called for an ambulance and the Fairfield Police Department.

The victim was taken to St. Vincent's Medical Center in Bridgeport and was later transferred to Yale-New Haven Hospital to be examined by a maxillofacial surgeon who diagnosed the victim with a jaw that was broken in two places. The victim underwent corrective surgery at University Hospital in New Jersey to realign his jaw with plates and screws. After the surgery, the victim's jaw was wired shut for four to six weeks. Two of his teeth were pulled. During that time, the victim could take nourishment only through a straw. At the time of trial, the victim continued to have pain in his mouth and complained that his jaw will never function the same as it did before it was broken.

The Fairfield Police Department investigated the incident and obtained arrest warrants for both Lee and the defendant. The defendant was charged with robbery in the first degree in violation of § 53a-134 (a) (1); assault in the second degree in violation of General Statutes § 53a-60 (a) (1); larceny in the second degree in violation of §§ 53a-119 and 53a-123 (a) (3); conspiracy to commit robbery in the first degree in violation of §§ 53a-48 and 53a-134 (a) (1); and conspiracy to commit larceny in the second degree in violation of §§ 53a-48, 53a-119, and 53a-123a (3).

A jury found the defendant guilty of conspiracy to commit robbery in the first degree and conspiracy to commit larceny in the second degree, and not guilty of the other three charges. The court sentenced him on each count to five years incarceration, suspended after one year, and five years of probation. The court ordered the sentences to run concurrently. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant challenges the sufficiency of the evidence to sustain his conviction of conspiracy to commit robbery in the first degree.[2] Specifically, the defendant claims that the evidence was insufficient to establish beyond a reasonable doubt that he had the specific intent to cause "serious physical injury" to the victim. We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a

reasonable doubt. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Vega*, 128 Conn. App. 20, 26–27, 17 A.3d 1060, cert. denied, 301 Conn. 919, 21 A.3d 463 (2011).

To establish the crime of conspiracy, the evidence must show that an agreement to engage in conduct constituting a crime had been entered into, that the conspirators intended for the conduct to be performed, and that an overt act in furtherance of the conspiracy followed. General Statutes § 53a-48 (a); *State* v. *Palangio*, 115 Conn. App. 355, 362, 973 A.2d 110, cert. denied, 293 Conn. 919, 979 A.2d 492 (2009). "Conspiracy is a specific intent crime, with the intent divided into two elements: (a) the intent to agree or conspire and (b) the intent to commit the offense which is the object of the conspiracy. . . . Thus [p]roof of a conspiracy to commit a specific offense requires proof that the conspirators intended to bring about the elements of the conspired offense." (Citation omitted; internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 167, 869 A.2d 192 (2005). A formal agreement is not necessary to sustain a conspiracy conviction "[b]ecause [given] the secret nature of conspiracies, a conviction is usually based on circumstantial evidence . . . [and] *inferred from the conduct of the accused*." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Boykin*, 27 Conn. App. 558, 564–65, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992).

In the present matter, the crime that was the object of the conspiracy was robbery in the first degree. Section 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery . . . he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime . . . ." General Statutes § 53a-3 (4) defines "serious physical injury" as an "injury which creates a substantial risk of death, or which cause *serious disfigurement*, serious impairment of health or serious loss or *impairment of the function of any bodily organ*." (Emphasis added.) In turn, General Statutes § 53a-133 provides in relevant part: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person . . . ."

The defendant argues that the evidence was insufficient to prove that, with a single punch, he had the specific intent to cause serious physical injury to the victim. In this appeal, both the defendant and the state construe the conspiracy to commit robbery in the first degree statutes; General Statutes §§ 53a-48 and 53a-134 (a) (1); as requiring proof of specific intent for all elements of the offense, including subdivision (1) of § 53a-134 (a), causing "serious physical injury."[3] The defendant cites other cases in which courts have found the defendant caused "serious physical injury" on the basis of more severe conduct than one punch to the victim. Our courts, however, have found sufficient evidence of serious physical injury when, in conjunction with other ailments, victims have suffered broken bones and lost teeth. See *State* v. *Robinson*, 174 Conn. 604, 606, 392 A.2d 475 (1978) (victim suffered from two fractured ribs and fractured finger); *State* v. *Sawicki*, 173 Conn. 389, 395, 377 A.2d 1103 (1977) (victim sustained fractured upper jaw and cheekbones, required corrective surgery and jaw wired shut for four and one-half weeks); *State* v. *Lewis*, 146 Conn. App. 589, 607, 79 A.3d 102 (2013) (victim suffered fractured bones in his face and nose and four chipped teeth), cert. denied, 311 Conn. 904, 83 A.3d 605 (2014); *State* v. *Barnett*, 53 Conn. App. 581, 595, 734 A.2d 991 (victim lost four teeth), cert. denied, 250 Conn. 918, 738 A.2d 659 (1999).

Both the defendant and the state acknowledge that "[i]ntent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Internal quotation marks omitted.) *State* v. *Corona*, 69 Conn. App. 267, 278, 794 A.2d 565, cert. denied, 260 Conn. 935, 802 A.2d 88 (2002). The defendant further submits that a "single punch to the mouth does not naturally and necessarily cause a [serious] physical injury." This court recognizes that a serious physical injury is "fact intensive and not predicated upon a threshold showing of grievousness." *State* v. *Lewis*, supra, 146 Conn. App. 608. Whether a victim has suffered serious physical injury is a question of fact for the jury. *State* v. *Sewell*, 38 Conn. App. 20, 23, 658 A.2d 598, cert. denied, 234 Conn. 918, 661 A.2d 98 (1995). "We note that [i]t is not the function of this court to sit as the seventh juror when we review the sufficiency of the evidence . . . ." (Internal quotation marks omitted.) *Doyle Group* v. *Alaskans for Cuddy*, 146 Conn. App. 341, 352, 77 A.3d 880 (2013).

"[Jurors] may draw from the evidence only such inferences as are reasonable, but they are not required to put aside their common sense." *State* v. *Palangio*, supra, 115 Conn. App. 366. In the present case, the jury reasonably could have inferred from the following facts that

the defendant conspired with others to steal the victim's chain and to use force to do so with the intent to cause serious physical injury: Lee and the defendant arrived on campus together in his black Mazda; they and the victim attended the same party; upon leaving the townhouse, Lee hit the victim in the back of the head and the defendant punched him in the jaw in quick succession; an unknown individual forcibly removed the victim's silver and gold chain immediately thereafter; and then the defendant, Lee, and another man were observed running toward the black Mazda and fleeing the scene. See *State* v. *Channer*, 28 Conn. App. 161, 169, 612 A.2d 95 ("evidence clearly demonstrates that the entire chain of events . . . could be [viewed] as *intentional* conduct supporting" conviction of conspiracy to commit robbery in the first degree [emphasis added]), cert. denied, 223 Conn. 921, 614 A.2d 826 (1992). Given these facts presented at trial, the jury reasonably could have found that the act of punching the victim directly in the jaw is strongly corroborative of an intention to cause serious physical injury. "[T]he jury may infer that the defendant intended the *natural* consequences of his actions." (Emphasis added.) *State* v. *McRae*, 118 Conn. App. 315, 320, 983 A.2d 286 (2009). The jury reasonably could find that a punch in the mouth could result in a broken jaw and the loss of two teeth.

Construing the evidence in the light most favorable to sustaining the jury's verdict, we conclude that the jury reasonably could have found beyond a reasonable doubt that the defendant had the specific intent to cause the victim serious physical injury. Accordingly, we reject the defendant's insufficiency of the evidence claim.

## II

On appeal, the state brought a double jeopardy issue to this court's, and the defendant's, attention. The state noted that punishing the defendant for two conspiracy convictions stemming from a single unlawful agreement violated the double jeopardy clause of the federal constitution. We agree.

"A conspiracy to commit multiple offenses is, itself, a single offense. . . . The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute . . . . For such a violation, only the single penalty prescribed by the statute can be imposed. . . . [When] the facts point to only one agreement, the defendant cannot be subject to sentencing for two conspiracies. . . . Multiple, albeit concurrent, sentences are not proper and cannot stand . . . ." (Internal quotation marks omitted.) *State* v. *Guzman*, 125 Conn. App. 307, 320, 7 A.3d 435 (2010), cert. denied, 300 Conn. 902, 12 A.3d 573 (2011).

The information charging the defendant with conspiracy to commit robbery in the first degree and conspiracy

to commit larceny in the second degree alleged that both conspiracies arose out of the same factual scenario and that the agreements were entered into on the same date, at the same time, and at the same location. After the jury found the defendant guilty of both conspiracy charges, the trial court ordered both sentences to run concurrently, for a total effective sentence of five years' incarceration, suspended after one year, and five years of probation. Accordingly, we conclude that the defendant's multiple sentences for two conspiracy crimes arising out of a single agreement are unlawful and cannot stand. The appropriate remedy, pursuant to *State* v. *Polanco*, 308 Conn. 242, 245, 249 n.3, 61 A.3d 1084 (2013), is to reverse the conviction of conspiracy to commit larceny in the second degree and remand the case to the trial court.[4]

The judgment is reversed only as to the conviction of conspiracy to commit larceny in the second degree and the case is remanded with direction to vacate the conviction of that offense. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] Although the defendant did not raise the issue on appeal, the state has posited that the defendant's separate punishment for two conspiracy convictions arising out of a single unlawful agreement violates the double jeopardy clause; we agree. See part II of this opinion.

[2] The defendant claims that there was insufficient evidence to support his convictions for conspiracy to commit robbery in the first degree and conspiracy to commit larceny in the second degree because "the jury found the defendant not guilty, as a principal or accessory, of the three substantive crimes charged." Our appellate courts repeatedly have recognized that "[w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Claudio C.*, 125 Conn. App. 588, 600, 11 A.3d 1086 (2010), cert. denied, 300 Conn. 910, 12 A.3d 1005 (2011). The defendant's claim of inconsistency in the jury verdict is only addressed in one paragraph and he fails to cite any legal authority in support of his argument. Accordingly, we decline to review this claim.

[3] This case brings into view an anomaly in our law. The robbery in the first degree statute, § 53a-134 (a) (1), requires a perpetrator to *cause* serious physical injury but does *not* require a *specific intent* to do so. In *State* v. *Pond*, 138 Conn. App. 228, 233, 50 A.3d 950, cert. granted, 307 Conn. 933, 56 A.3d 714 (2012), this court held that the language of the conspiracy statute, § 53a-48, requires proof of a specific intent to perform *all elements* of the crime that was the object of the conspiracy, including any aggravating elements. Our Supreme Court granted certification in *Pond*, on the issue of whether this court "properly determine[d] that in order to convict a defendant of conspiracy to commit robbery in the second degree . . . the state must prove that the defendant conspirator had the specific intent that there would be a display or threat of the use of what was represented to be a deadly weapon or dangerous instrument, even if that specific intent is not required for proof of the underlying crime of robbery in the second degree?" *State* v. *Pond*, 307 Conn. 933, 56 A.3d 714 (2012). The issue is still pending before our Supreme Court.

In his concurrence in *Pond*, Justice Borden highlights the "anomaly in our Supreme Court's interpretation of the conspiracy section of the Penal Code." *State* v. *Pond*, supra, 138 Conn. App. 239 (*Borden, J.*, concurring). "It is simply anomalous that the state would be required to prove a greater mens rea for an inchoate crime—conspiracy—than for the completed crime itself." (Emphasis omitted.) Id., 246–47. Because the state makes no claim in this appeal that, to prove the charge of conspiracy to commit robbery in the first degree, it was not required to prove that the defendant had the specific intent to cause serious physical injury, we do not address that claim.

[4] The state accurately noted that the question of proper remedy for situations such as the one before us is currently pending in our Supreme Court. That court granted certification in *State* v. *Wright*, 144 Conn. App. 731, 745–49, 73 A.3d 828, cert. granted, 310 Conn. 945, 80 A.3d 907, 908 (2013), on the issue of whether this court properly applied *Polanco* to multiple punishments for the defendant's three conspiracy convictions arising out of a single agreement.

---