# STATE OF CONNECTICUT *v.* ROCCO J. TESTA
## (AC 30783)

DiPentima, C. J., and Bear and Pellegrino, Js.

Argued May 17—officially released September 14, 2010

*Rosemarie T. Weber*, special public defender, for the appellant (defendant).

*Kathryn M. Boucher*, certified legal intern, with whom were *Michele C. Lukban*, senior assistant state's attorney, and, on the brief, *Scott J. Murphy*, state's attorney, and *Ronald Dearstyne*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Rocco J. Testa, appeals from the judgment of conviction, rendered after a jury trial, of burglary in the third degree in violation of General Statutes § 53a-103 (a), criminal mischief in the third degree in violation of General Statutes § 53a-117 (a) (1) (A), failure to bring a motor vehicle to a full stop when signaled in violation of General Statutes § 14-223 (b), evasion of responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (b) and reckless driving in violation of General Statutes

§ 14-222 (a).[1] The defendant subsequently pleaded guilty to being a persistent serious felony offender pursuant to General Statutes § 53a-40 (c). On appeal, the defendant claims that (1) the evidence was insufficient to support his conviction and (2) a photographic array was impermissibly suggestive. We disagree and, accordingly, affirm the judgment of conviction.

The jury reasonably could have found the following facts. On June 27, 2007, the victim, Maryann Nypert, returned home from work to her residence located in Plymouth. After opening the garage door, she observed an individual run out of her living room and across the street to a parking lot. She observed this individual remove the rear license plate from a black Jeep with a red stripe, enter the Jeep and drive away. Nypert then went into her residence, observed signs of a forced entry and telephoned the police department.

The police began a search for the Jeep. Although various members of the Plymouth police department briefly located the vehicle, the driver of the Jeep managed to elude them. Richard E. Reney, a Plymouth police officer, was stopped at a three way intersection and observed the Jeep approach him. As the Jeep proceeded through the intersection without stopping at the stop sign, the driver of the Jeep, later identified as the defendant, smiled and waved at Reney. Reney, who observed that the Jeep was missing a license plate, followed the defendant for a time but was forced to cease his pursuit in the interest of public safety. Later that night, Reney saw two other members of the police department preparing a photographic array. Reney immediately pointed to an image of the defendant and identified him as the driver of the Jeep.[2]

---

[1] The jury returned a verdict of not guilty with respect to a charge of larceny in the sixth degree in violation of General Statutes § 53a-125b.

[2] During the trial, Reney also identified the defendant as the driver of the Jeep.

In the course of the investigation, the police department collected certain physical evidence that showed that the defendant had driven the Jeep onto a residential property to elude the police officers during their chase. While doing this, he left tire marks on the property and damaged a downspout, backyard fence and walkway. A piece of molding from the Jeep was located near the downspout. On June 28, 2007, members of the police department located the Jeep, and the defendant subsequently was arrested.

The jury found the defendant guilty of burglary in the third degree, criminal mischief in the third degree, failure to bring a motor vehicle to a full stop when signaled, evasion of responsibility in the operation of a motor vehicle and reckless driving. The defendant subsequently pleaded guilty in a part B information to being a persistent serious felony offender. The court sentenced the defendant to twelve years incarceration. This appeal followed.

I

The defendant first claims that the evidence was insufficient to support his conviction. Specifically, he argues that there was insufficient evidence to prove beyond a reasonable doubt that he was the perpetrator of the offenses. We are not persuaded.

At the outset, we set forth the standard of review and controlling legal principles. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences

that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [trier's] factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Morelli*, 293 Conn. 147, 151–52, 976 A.2d 678 (2009); see also *State* v. *Hall*, 120 Conn. App. 191, 196, 991 A.2d 598, cert. denied, 297 Conn. 903, 994 A.2d 1288 (2010).

In the present case, the victim observed an individual run out of her home and get into a Jeep. Police officers received a description of this vehicle and began pursuit near the victim's home shortly thereafter. At one point during the chase, Reney looked directly at the defendant, who waved at him and drove the Jeep off in the

opposite direction. As the Jeep went by him, Reney noticed that it was missing a license plate. Physical evidence, including tire marks, vehicular molding and damage to property showed how the defendant managed to elude the officers by driving behind a residence. Evidence established that the Jeep was registered to the defendant. The defendant correctly asserts that the victim was unable to identify the defendant as the individual she saw running from her home and that the police were unable to recover fingerprints or the stolen items. Nevertheless, the evidence, taken as a whole, supported the jury's finding that the defendant had committed these criminal acts.

The defendant also argues that Reney's description of the defendant did not match the photograph of the defendant that he chose from the array that other members of the police department were preparing. At the time of the incident, Reney described the driver of the Jeep as having a "scruffy beard" and "light hair . . . ."[3] The image of the defendant in the photographic array depicted a clean-shaven bald man. Defense counsel cross-examined Reney regarding his description of the defendant. On redirect examination, the prosecutor

[3] The prosecutor examined Reney at trial as follows:

"Q. . . . Did you offer—did you give the dispatcher, your dispatcher, any description of that person [who was driving the Jeep]?

"A. Yes, sir. I described the person as late forties, early fifties. He appeared to have light hair and a scruffy beard.

"Q. Okay. Was he wearing a hat at the time?

"A. No, sir.

"Q. Any passengers in the vehicle?

"A. No sir.

"Q. Now when you say 'scruffy beard,' explain to the jury, please, what you mean by that.

"A. It appeared that he hadn't shaved in three, four days. He wasn't clean-shaven.

"Q. So, it wasn't—

"A. It wasn't a beard, beard, but it just looked like, like I said, somebody that hadn't shaved in three or four days."

asked Reney what he meant by "light hair . . . ." Reney responded: "I used to shave my hair just like [the defendant] does, and after a few days, if you didn't shave it, it would be a short, stubbly haircut just like not shaving your face."

We cannot conclude that the evidence was insufficient merely on the basis of Reney's description of the defendant's appearance. The jury was free to accept his later explanation during redirect examination. See *State* v. *Hall*, supra, 120 Conn. App. 198 ("we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude" [internal quotation marks omitted]). Furthermore, assuming arguendo that Reney's testimony was inconsistent, it does not follow that the conviction was based on insufficient evidence. "[E]vidence is not insufficient . . . because it is conflicting or inconsistent. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Pickel*, 121 Conn. App. 443, 449–50 n.7, 995 A.2d 125 (2010). Mindful of our standard of review, we conclude that the cumulative impact of the evidence supported the defendant's conviction. Accordingly, we reject the defendant's claim that the evidence was insufficient.

II

The defendant next claims that the photographic array was impermissibly suggestive. Specifically, he argues that the array from which Reney identified the defendant was unnecessarily suggestive and unreliable so that admission of the identification violated the

defendant's federal constitutional right to due process.[4] We agree with the state that the record is inadequate to review the defendant's claim.

The defendant concedes that this issue was not raised at trial and therefore seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "Under the familiar principle established in *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if each of four conditions is met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Marcelino S.*, 118 Conn. App. 589, 594, 984 A.2d 1148 (2009), cert. denied, 295 Conn. 904, 988 A.2d 879 (2010). The state argues that the defendant's claim fails under the first prong of *Golding*.

Although the defendant filed a motion to suppress on October 1, 2008, the motion did not address Reney's identification of the defendant in the photographic array.[5] Accordingly, the court did not conduct a hearing, or make any factual findings or conclusions with respect to the photographic array.

---

[4] To the extent that the defendant also asserts a claim that his rights were violated under the Connecticut constitution, he has failed to provide an independent analysis of this issue. See *State* v. *Banks*, 117 Conn. App. 102, 106 n.1, 978 A.2d 519, cert. denied, 294 Conn. 905, 982 A.2d 1081 (2009); see also *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992) (providing tools for analysis of state constitutional claims). We therefore deem the defendant to have abandoned any state constitutional claim.

[5] Specifically, the motion sought to suppress the evidence seized at the defendant's residence.

We begin by setting forth the relevant legal principles. "In determining whether identification procedures violate a defendant's due process rights, [t]he required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances. . . . An identification procedure is unnecessarily suggestive only if it gives rise to a very substantial likelihood of irreparable misidentification. . . . The defendant bears the burden of proving both that the identification procedures were unnecessarily suggestive and that the resulting identification was unreliable. . . . Generally, [t]he exclusion of evidence from the jury is . . . a drastic sanction, one that is limited to identification testimony which is manifestly suspect." (Internal quotation marks omitted.) *State* v. *Bowens*, 62 Conn. App. 148, 160, 773 A.2d 977, cert. denied, 256 Conn. 907, 772 A.2d 600 (2001); see also *State* v. *Gant*, 231 Conn. 43, 70, 646 A.2d 835 (1994), cert. denied, 514 U.S. 1038, 115 S. Ct. 1404, 131 L. Ed. 2d 291 (1995).

"Because the inquiry into whether evidence of pretrial identification should be suppressed contemplates a series of factbound determinations, which a trial court is far better equipped than this court to make, we will not disturb the findings of the trial court as to subordinate facts unless the record reveals clear and manifest error. . . . Because the issue of the reliability of an identification involves the constitutional rights of an accused . . . we are obliged to examine the record scrupulously to determine whether the facts found are adequately supported by the evidence and whether the court's ultimate inference of reliability was reasonable." (Internal quotation marks omitted.) *State* v. *Ortiz*, 252 Conn. 533, 553, 747 A.2d 487 (2000).

As a result of the defendant's failure to raise the issue, the court never made any factual findings with respect to the photographic array used by Reney to identify the defendant. We conclude that, as a result, the record is inadequate for our review. In reaching this conclusion, we are guided by our Supreme Court's decision in *State* v. *Gant*, supra, 231 Conn. 43. In that case, the defendant challenged a prior in-court identification that had occurred at a probable cause hearing. Id., 69. Initially, the police had shown a witness a six person photographic array, and the witness was unable to make a positive identification, although she was able to select two photographs as images of possible perpetrators. Id. Later, at the probable cause hearing, the witness was "[v]ery close to 100 percent sure about her identification . . . ." (Internal quotation marks omitted.) Id., 70.

The court noted that the defendant in *Gant* had not challenged the photographic array itself before the trial court. Id., 70–71 n.19. On appeal, he attempted to challenge the array as unnecessarily suggestive because the two photographs the witness initially selected had been " 'highlighted.' " Id., 71 n.19. Our Supreme Court declined to consider the merits of this claim. "Because there is no record of a challenge to the [photographic] array before the trial court, we, not being a fact finding, but a reviewing court, cannot pass on the matter as it applies to the alleged suggestiveness of the [photographic] array. The defendant has an obligation to provide this court with a record adequate to review his claims." Id.; see also *State* v. *Morgan*, 274 Conn. 790, 793–94 n.5, 877 A.2d 739 (2005) (where defendant failed to object, file motion to suppress, request hearing or make any motion in opposition to out-of-court identification procedure, lack of essential factual findings or legal conclusions resulted in claim being unreviewable due to inadequate record); *State* v. *Hicks*, 101 Conn. App. 16, 19–20, 919 A.2d 1052 (2007) (same).

The rationale of these cases applies to the present case. We conclude that the record is inadequate to review the defendant's claim regarding the photographic array and the subsequent identification by Reney.

The judgment is affirmed.

In this opinion the other judges concurred.