STATE OF CONNECTICUT *v.* EDWIN D. VEGA
(AC 31518)

Lavine, Beach and Pellegrino, Js.

Argued February 10—officially released April 19, 2011

*Cameron R. Dorman*, special public defender, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *David L. Zagaja*, senior assistant state's attorney, for the appellee (state).

22

LAVINE, J. The defendant, Edwin D. Vega, appeals from the judgment of conviction, rendered following a jury trial, of one count each of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2) and 53a-48, and assault in the first degree in violation of General Statutes § 53a-59 (a) (5). On appeal, the defendant claims that (1) the evidence was insufficient to prove, beyond a reasonable doubt, that he was the individual who committed the offenses, (2) the court abused its discretion when it permitted a police officer to offer his expert opinion concerning the defendant's cellular telephone and (3) the court erroneously instructed the jury regarding consciousness of guilt. The judgment is affirmed.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. In the autumn of 2007, Daryl Wells was enrolled as a freshman at Trinity College in Hartford. Immediately upon enrolling at Trinity College, Wells met a woman named Elysha Padilla, and the two became close friends. On April 26, 2008, Wells and Padilla had a "romantic encounter" while in Padilla's dormitory room. After this encounter, Wells attempted to contact Padilla several times, but she ended all communication with him.

On May 5, 2008, Wells was in his dormitory room when an unknown woman (woman), whom he had never seen before, came to his door and gave him a letter that she claimed was from Padilla. The letter indicated that Padilla was distressed, prompting Wells to decide that he needed to go see her. The woman told Wells that Padilla was staying in her apartment and offered to take him there. Wells, however, elected

to follow the woman in his own car. The two went outside, and the woman entered a charcoal colored Toyota Camry that was being driven by an unknown male. Wells followed the Camry to the Trinity Apartment Complex (apartment complex) on Sherbrooke Avenue, which was about one and one-half miles away from the Trinity College campus.

At approximately 9:40 p.m., Wells exited his car and followed the woman along the side of the apartment building. The woman told Wells that she forgot her key and would have to get it from her boyfriend. Wells followed the woman back to the parking lot and, as they were walking, Wells noticed two men coming toward them, one of whom was the defendant. As the defendant and his companion approached Wells, the woman kept walking past them. Wells greeted the two men, but they did not respond. The defendant then pulled a gun from under his shirt and told Wells to get on his knees, which he did. The second man then circled around Wells.

Wells pleaded with the two men to leave him alone and stated that there must be a misunderstanding and that he did not have any money. The two men did not respond to Wells' comments and suddenly began attacking him. Wells fell on his back, covered his head to protect himself and began yelling for help. Despite his pleas for them to stop, the defendant and his companion continued attacking Wells. The defendant pistol-whipped Wells in the head several times and, at one point, Wells heard a loud bang and then felt blood gushing from his forehead. When the two men were done attacking Wells, the defendant reached into Wells' back pant's pocket and took his wallet.

Some residents of the apartment complex came to Wells' assistance, and the police and paramedics who arrived were alerted to Wells' condition. Wells was

taken to Hartford Hospital where he was told that a bullet had grazed his temple and that he had a broken finger and bruises all over his body.

Detective Andrew Jacobson conducted the police investigation of the attack on Wells. Jacobson learned that the woman lured Wells to the apartment complex with a note allegedly from Padilla. Jacobson then obtained Padilla's telephone and text message records, which revealed substantial communication between her and the defendant. Specifically, Jacobson noticed many telephone calls between Padilla and the defendant on May 5, 2008, the day of the attack, and that Padilla had received four text messages from the defendant and sent one to him at about the time of the attack. Jacobson also learned that the defendant drove a dark colored Toyota Camry.

On the basis of this information, Jacobson created an array of photographs that included a photograph of the defendant. Jacobson presented the array to Wells, and Wells identified the defendant as one of the individuals who attacked him, and, specifically, the individual who fired the gun at him. The police then arrested the defendant, who voluntarily surrendered his cellular telephone. The defendant also waived his *Miranda* rights,[1] admitted to knowing Padilla and told the police that the two had become romantically involved in July, 2008. On May 18, 2009, the defendant was charged with robbery in the first degree, conspiracy to commit robbery in the first degree and assault in the first degree. The defendant pleaded not guilty to the charges and elected to be tried by a jury.

At trial, Wells positively identified the defendant as the man who had pistol-whipped and shot him. The

---

[1] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

prosecution also presented testimony from several witnesses concerning the operation of the cellular telephones possessed by the defendant and Padilla. Dan Jensen, a Sprint/Nextel records custodian, testified that on the night and at the approximate time of the attack, the defendant's telephone was used to place and receive calls and text messages from Padilla's telephone and that the cell site that received the transmissions made at the time of the attack was located at 2731 South Main Street in West Hartford. State inspector Stephen Kumnick testified that the cell tower accessed by the defendant's telephone at the time of the attack was only 1.02 miles from the apartment complex. Finally, New Britain police Sergeant Christopher Chute testified concerning the results of his forensic analysis of the defendant's telephone. Chute testified that the defendant's telephone contained text messages dated from September to October, 2007, and two messages from January, 2008. He noted, however, that there were no text messages found on the telephone that were dated between January and June, 2008. Chute also testified, over the defendant's objection, that there were only two reasons why there would not be text messages dated between January and July, 2008, on the defendant's telephone. One reason was that they deliberately were deleted; the other reason was that no messages were received or sent. When asked on cross-examination whether text messages can be deleted because too many were sent or received by the telephone, Chute responded that he was not aware that that could happen but that "[a]nything is possible . . . ."

The defendant was convicted on all charges and sentenced to an effective term of fourteen years incarceration, execution suspended after seven years, and three years of probation. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the evidence was insufficient to prove beyond a reasonable doubt that he was the individual who committed the offenses. Specifically, the defendant claims that he could not be identified as the individual who committed the offenses because there was considerable discrepancy between Wells' descriptions of the individual who pistol-whipped him and the defendant's actual height. The defendant also argues that he could not be identified because Wells did not have a clear view of his assailants' faces at the time of the attack. We disagree.

The following additional facts are relevant to the defendant's claim. When the police arrived at the apartment complex after the attack, Wells told Hartford police Officer Jonathan Youens that he was attacked by two Hispanic males, each between five feet, seven inches and five feet, nine inches tall. Also, after investigating Wells' claims, Jacobson prepared an initial report concerning the attack and listed the two assailants as five feet, eight inches. Jacobson later learned that the defendant's height is five feet, two inches.

Concerning Wells' ability to identify the faces of his attackers, Wells testified that it was dark when the attack occurred and that he could not see either of his assailants' faces clearly but that he saw most of the face of the individual with the gun from the eyes downward. As noted, however, Wells positively identified the defendant at trial as the individual who pistol-whipped him and, at trial, described his height as five feet, five inches to five feet, seven inches.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the

inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *McGee*, 124 Conn. App. 261, 272, 4 A.3d 837, cert. denied, 299 Conn. 911, 10 A.3d 529 (2010).

We first note that the defendant's claims concerning the varying descriptions given by Wells of his assailants' heights are a challenge to Wells' credibility as a witness rather than a challenge based on the sufficiency of the evidence. "[E]vidence is not insufficient . . . because it is conflicting or inconsistent. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Testa*, 123 Conn. App. 764, 770, 3 A.3d 142, cert. denied, 298 Conn. 934, 10 A.3d 518 (2010). Although Wells initially told the police that his assailants were between five feet, seven inches and five feet, nine inches tall, he positively identified the defendant at trial as the individual who pistol-whipped him. It is not uncommon for victims laboring under the stress of an assault to provide varying descriptions of a perpetrator's height, weight, hairstyle or other identifying characteristics. It was within the discretion of the

jury to believe this testimony based on all of the evidence concerning Wells' prior statements about his assailants' heights.

We further conclude that, in addition to the in-court identification by Wells, there was other sufficient evidence presented at trial to sustain the defendant's conviction. As noted, the prosecution presented testimony from several expert witnesses concerning the cellular telephones operated by the defendant and Padilla. There was evidence that on the night and approximate time of the attack, the defendant's telephone was used to place and receive calls and text messages from Padilla's telephone and that the cell site that received the transmissions made at the time of the attack was located only 1.02 miles from the apartment complex. The prosecution also presented evidence that the defendant knew Padilla, that the two had become romantically involved in July, 2008, and that the defendant drove a car that was similar in make and color to the one Wells followed to the apartment complex on the night of the attack. In light of this evidence, the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt.[2] Accordingly, we reject the defendant's claim that the evidence was insufficient.

II

The defendant also claims that the court abused its discretion when it permitted Chute to offer his expert

---

[2] The defendant also claims that the testimony of Awilda Esquilin, a resident of the apartment complex, who stated that she was 110 percent sure that the defendant was not one of the attackers, should have been credited over the testimony of Wells, who had stated after viewing the photographic array prepared by Jacobson that he was 95 percent sure that the defendant was the individual who had pistol-whipped him. Again, this is an attack on the credibility of Wells' testimony rather than a challenge to the sufficiency of the evidence. The jury was free to believe Wells' testimony and discredit the testimony of Esquilin, and we will not disturb that finding.

opinion concerning the calls and text messages received by and sent from the defendant's cellular telephone. Specifically, the defendant claims that Chute's testimony should not have been permitted because it was prejudicial, irrelevant and purely speculative.[3]

"The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence . . . [and its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *Desrosiers* v. *Henne*, 283 Conn. 361, 365–66, 926 A.2d 1024 (2007).

## A

The defendant first claims that Chute's testimony concerning the absence of text messages dated between

---

[3] The defendant also claims that Chute's testimony was an impermissible expression of an opinion as to an ultimate fact. The defendant concedes that this issue was not preserved at trial; however, he seeks review under the plain error doctrine.

"The plain error doctrine is based on Practice Book § 60-5, which provides in relevant part: The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . . The plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under [the] plain error [doctrine] unless [he] has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Guzman*, 125 Conn. App. 307, 317–18, 7 A.3d 435 (2010), cert. denied, 300 Conn. 902, 12 A.3d 573 (2011). We conclude that this is not such a truly extraordinary situation that warrants review of the defendant's claim.

January and June, 2008, on the defendant's telephone was irrelevant because it did not reflect an open and visible connection to the defendant's guilt and, even assuming that it had some remote relevance, it was highly prejudicial. We disagree and conclude that the court did not abuse its discretion in allowing Chute to testify.

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. . . . Relevant evidence is excluded, however, when its probative value is outweighed by the danger of unfair prejudice. . . . [T]he determination of whether the prejudicial impact of evidence outweighs its probative value is left to the sound discretion of the trial court . . . and is subject to reversal only [when] an abuse of discretion is manifest or injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State* v. *Allen*, 289 Conn. 550, 562–63, 958 A.2d 1214 (2008). Our Supreme Court has also concluded that "[t]he test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury." (Internal quotation marks omitted.) *State* v. *Smith*, 275 Conn. 205, 218, 881 A.2d 160 (2005).

The defendant claims that any evidence regarding the large block of missing text messages dated from January through June, 2008, is irrelevant because it does not make it more probable that the text messages sent from and received by the defendant's telephone

on the night of the attack intentionally were deleted by the defendant. The defendant also argues that, even assuming that the evidence had some relevance, Chute's testimony created a side issue that confused and unduly distracted the jury from the ultimate issue.

We conclude that Chute's testimony concerning the absence of text messages dated from January to June, 2008, on the defendant's telephone had the logical tendency to aid the jury in determining the issue of guilt. See *State* v. *Allen*, supra, 289 Conn. 562. "The state of mind which is characterized as guilty consciousness or consciousness of guilt is strong evidence that the person is indeed guilty . . . ." (Internal quotation marks omitted.) *State* v. *Edwin M.*, 124 Conn. App. 707, 726, 6 A.3d 124 (2010), cert. denied, 299 Conn. 922, 11 A.3d 151(2011). Although Chute's testimony encompassed a larger time frame than the days surrounding the attack on Wells, it still aided the jury in determining whether the defendant displayed a consciousness of guilt. If the incriminating text messages were deliberately erased from the defendant's telephone, then evidence supporting such a determination renders it more probable that the defendant was the individual who attacked Wells.[4]

We further conclude that the probative value of Chute's testimony is not outweighed by the danger of unfair prejudice. Chute's testimony contained nothing that would unduly arouse the jury's emotions, nor did it create a side issue or consume an undue amount of

---

[4] In addressing the defendant's objection to Chute's testimony, the court concluded that Chute's testimony was admissible for establishing consciousness of guilt because the act of deleting text messages was similar to ripping pages out of a journal. Specifically, the court stated: "If a person . . . had a journal that they kept their whole life and . . . it was their practice to pretty much write down their daily activities and they were accused of criminal activities during a certain period of time, the fact that—that those pages of the journal were missing could—if the state had access to them, could be shown. . . . This is—this is just like—this is like a journal."

time. As noted, the evidence pertained to the defendant's consciousness of guilt and did not distract the jury from the ultimate issue of determining the defendant's guilt. See *State* v. *Oliveras*, 210 Conn. 751, 759, 557 A.2d 534 (1989) ("[e]vidence that an accused has taken some kind of evasive action to avoid detection for a crime, such as flight, concealment of evidence, or a false statement, is ordinarily the basis for a charge on the inference of consciousness of guilt").

### B

The defendant also argues that the Chute's testimony was improper because he gave opinions that were purely speculative and, therefore, created a specious inference of a consciousness of guilt. Again, we disagree.

"Concerning expert testimony specifically, we note that the trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed." (Internal quotation marks omitted.) *State* v. *Perkins*, 271 Conn. 218, 264, 856 A.2d 917 (2004). "Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. . . . In other words, [i]n order to render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion." (Citations omitted; internal quotation marks omitted.) *Sullivan* v. *Metro-North Commuter Railroad Co.*, 292 Conn. 150, 158, 971 A.2d 676 (2009).

The defendant claims that two of Chute's opinions were impermissible because they were speculative. Specifically, the defendant challenges Chute's opinions

that the text messages from January through June, 2008, were missing on the defendant's telephone due to inactivity or because they were deliberately deleted and that text messages could only be deleted by the user deliberately erasing them. In support of his challenge to Chute's testimony, the defendant asserts that Chute's assumption that it was not reasonably possible that the defendant's telephone would automatically delete older text messages when it reached its storage capacity was patently false. He also claims that Chute either lacked a sufficient understanding of cellular telephone functions or neglected to take them into consideration when stating his opinions as to why there were no text messages on the telephone between January and June, 2008.

On the basis of our review of Chute's testimony, we are persuaded that his opinion was based on his analysis of the defendant's telephone in addition to his education, training and experience gained from conducting forensic investigations.[5] Furthermore, the defendant's claims that Chute's opinions were incorrect and that he lacked an understanding of cellular telephones goes to the weight of his testimony rather than its admissibility. See *DiPietro* v. *Farmington Sports Arena, LLC*, 123 Conn. App. 583, 613, 2 A.3d 963 ("[t]he underlying principle is that if any reasonable qualifications can be established, the objection goes to the weight rather than the admissibility of the [expert's opinion] evidence" [internal quotation marks omitted]), cert. granted on other grounds, 299 Conn. 920, 10 A.3d 1053 (2010). The defendant had the opportunity to challenge Chute's opinions on cross-examination, and it was the duty of the jury to determine the credibility of Chute's testimony in light of any conflicting evidence presented by

[5] Prior to offering his opinions concerning the defendant's cellular telephone, Chute testified that he was employed by the New Britain police department as the supervisor of the digital forensic unit. In this position, he examines digital evidence found within cellular telephones, computers and digital cameras and retrieves data that is both present on the media or has been deleted.

the defendant. Accordingly, we conclude that the court did not abuse its discretion in admitting Chute's testimony.

## III

Finally, the defendant claims that the court's instructions to the jury on consciousness of guilt were improper because, while technically correct, the jury was improperly guided to draw a speculative inference from Chute's irrelevant and prejudicial opinions, which were only conjecture. We disagree.

"It has been stated numerous times that consciousness of guilt issues are evidentiary and not constitutional in nature. . . . When a challenge to a jury instruction is not of constitutional magnitude, the charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Weed*, 118 Conn. App. 654, 663, 984 A.2d 1116 (2009).

The defendant does not challenge the substance of the court's instructions to the jury on consciousness of guilt.[6] Instead, he claims that they "unfairly presented

---

[6] The court provided the following instructions to the jury concerning consciousness of guilt: "Now . . . consciousness of guilt. This is the instruction that deals with the claim that—by the state, that the erasing or deleting the cell phone texts showed consciousness of guilt; that's the testimony that we're talking about.

"And in any criminal trial it is permissible for the state to show . . . conduct by a defendant after the time of the alleged offense which may have been influenced by the criminal acts; that is, the conduct shows a consciousness of guilt.

. . . Chute's opinions to the jury in such a way that caused injustice to the defendant because his opinions were not relevant, [were] prejudicial and based on speculation." We already have concluded that Chute's testimony was not irrelevant, prejudicial or improper opinion. We conclude, therefore, that the court's instructions to the jury concerning consciousness of guilt were not improper because they were correct in law, adapted to the issues and sufficient for the guidance of the jury.

The judgment is affirmed.

In this opinion the other judges concurred.

"Such conduct does not, however, raise a presumption of guilt. If you find the evidence proved, and also find that the conduct was influenced by the criminal act and not by any other reason, you may, but are not required to, infer from this evidence that the defendant was acting from consciousness of guilt.

"It is up to you, as judges of the facts, to decide whether the defendant's conduct, if proved, reflects a consciousness of guilt and to consider such in your deliberations in conformity with these instructions."