# STATE OF CONNECTICUT *v.* LUIS RODRIGUEZ
## (AC 32279)

DiPentima, C. J., and Beach and Dupont, Js.

Argued January 3—officially released February 21, 2012

*Elizabeth M. Inkster*, senior assistant public defender, with whom was *Kelly M. Berwick*, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Vicki Melchiorre*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant, Luis Rodriguez, appeals from the judgment of conviction, rendered after a jury trial, of one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[1] On appeal, the defendant claims that (1) there was insufficient evidence to support his conviction for assault in the first degree and (2) the trial court abused its discretion in admitting certain testimonial evidence during trial.[2] The defendant's claims are intertwined because both involve the credibility of a witness, Angel Salvador Diaz,[3] who was the victim of the defendant's alleged assault. The defendant does not dispute that Diaz was assaulted, but claims that the state did not prove that he was the person who had assaulted Diaz. We affirm the judgment of the trial court.

---

[1] This appeal involves only the defendant's conviction for assault in the first degree in violation of § 53a-59 (a) (1). The defendant does not challenge the judgment of conviction, rendered following the same jury trial, for threatening in the second degree in violation of General Statutes § 53a-62 (a) (2) or interfering with an officer in violation of General Statutes § 53a-167a.

[2] With respect to his first claim, the defendant requests a judgment of acquittal. With respect to his second claim, the defendant requests a remand for a new trial.

[3] Angel Salvador Diaz is also known as "Juan Suarez." For purposes of this opinion, we refer to him by his legal name, Angel Salvador Diaz.

The jury reasonably could have found the following facts. On February 7, 2008, Diaz was working at the Brook Street Market in Hartford (market) with two other employees, William Ramirez and Franklin Ramirez. The defendant was known to Diaz, William Ramirez and Franklin Ramirez because he lived in the neighborhood and frequented the market where the three men worked. On the afternoon of February 7, 2008, the defendant entered the market and asked Diaz if he could borrow twenty dollars from him. Diaz gave the defendant a twenty dollar bill. The defendant exchanged the twenty dollar bill for twenty one dollar bills. Then, as patrons entered the market, the defendant handed them one or two of the dollar bills. After giving away all of the bills, the defendant left the market. He returned a short time later and asked Diaz if he could borrow twenty more dollars. Diaz refused. The defendant told Diaz, "fine, we're not friends anymore. . . . I'm Espana; you're going to see what's going to happen," and left the market.

At approximately 11 p.m., Diaz and William Ramirez took garbage out to a dumpster located in an alley behind the market. As Diaz was depositing garbage into the dumpster, the defendant stabbed Diaz twice in his left side with a knife. After stabbing Diaz, the defendant ran away with the knife in his hand. Diaz returned to the market and, while bleeding profusely, told Franklin Ramirez that the defendant had stabbed him. Diaz received emergency surgery and was hospitalized for a period of approximately five weeks as a result of the injuries he sustained during the attack.

On February 16, 2008, nine days after the attack on Diaz, the defendant returned to the market. William Ramirez and Franklin Ramirez were working at the market that day. The defendant, who was intoxicated, threatened William Ramirez, and made a gesture drawing his finger across his neck. The defendant stated to

the two men that he had stabbed Diaz. Police were called to the market and arrested the defendant, who was belligerent, resisted arrest and threatened the arresting officer.

The defendant was found guilty by a jury of one count of assault in the first degree in violation of § 53a-59 (a) (1) for the February 7, 2008 attack on Diaz, and, under a separate information joined for trial, of one count each of threatening in the second degree in violation of General Statutes § 53a-62 (a) (2) and interfering with an officer in violation of General Statutes § 53a-167a in connection with the February 16, 2008 incident at the market. He was sentenced to a total effective term of sixteen years imprisonment, execution suspended after eight years, with four years probation. This appeal followed. Additional facts will be set forth or reiterated as they become necessary.

I

On appeal, the defendant claims that there was insufficient evidence presented at trial to sustain his conviction for assault in the first degree. Specifically, he argues that there was not sufficient evidence to prove, beyond a reasonable doubt, that he was the individual who stabbed Diaz. We disagree.

The following facts are relevant to our resolution of the defendant's claim. On the evening of February 7, 2008, immediately following the attack on Diaz, police responded to the market. One of the responding officers testified that Diaz told him, in Spanish, that "he was approached by two black males, and they demanded his wallet. [Diaz] declined and one of the black males stabbed him." When asked by the officer whether he could identify his attackers, Diaz stated that he could not. During this brief exchange, Diaz was "distraught" and "had a blank look on his face." Thereafter, Diaz was transported to the hospital.

On March 19, 2008, after he was released from the hospital, Diaz went to the police station and met with a detective. Diaz stated that he could identify his attacker, whom he called "Espana," and gave a written statement to the detective. The detective presented Diaz with an array of eight photographs, from which Diaz identified a photograph of the defendant.

At trial, Diaz made an in-court identification of the defendant as the individual who had stabbed him. William Ramirez, who witnessed the attack on Diaz, testified that the defendant was the individual who had stabbed Diaz. Franklin Ramirez, who was working inside the market during the attack, testified that, after being stabbed, Diaz came into the market and stated that "Espana" had cut him.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *McGee*, 124 Conn. App. 261, 272, 4 A.3d 837, cert. denied, 299 Conn. 911,

10 A.3d 529 (2010), cert. denied, U.S. , 131 S. Ct. 2114, 179 L. Ed. 2d 908 (2011).

General Statutes § 53a-59 (a) (1) provides in relevant part: "A person is guilty of assault in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ." To convict the defendant of assault in the first degree, the state therefore was required to prove that the defendant (1) intended to cause Diaz serious physical injury and (2) injured Diaz by means of a deadly weapon or instrument.

The defendant does not contest that Diaz was seriously injured by means of a deadly weapon; rather, he argues that the evidence presented at trial was insufficient to prove that he was the individual who stabbed Diaz. He focuses on the facts that, in speaking to police on the night of the attack, Diaz did not identify the defendant as his attacker, William Ramirez denied witnessing the attack and Franklin Ramirez denied knowing who had stabbed Diaz.

The defendant's claim with respect to any inconsistent statements by Diaz, William Ramirez or Franklin Ramirez challenges the credibility of those witnesses, rather than the sufficiency of the evidence. "[E]vidence is not insufficient . . . because it is conflicting or inconsistent. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Vega*, 128 Conn. App. 20, 27, 17 A.3d 1060, cert. denied, 301 Conn. 919, 21 A.3d 463 (2011).

Although Diaz initially did not identify the defendant as his attacker, Diaz testified that he could not remember telling the police officer, on the night of the stabbing,

that he had been attacked by two black men, nor did he believe that he had done so. Diaz testified that he feared the police would find out that he was using a false identity and that, on March 19, 2008, he went to the police station to name the defendant as his attacker because "[the defendant] went back looking for me saying that he was going to finish what he had started." Although William Ramirez initially told the police that he had not witnessed the attack on Diaz, he testified that he was nervous and so did not tell the police everything he had witnessed on the night of the attack. Franklin Ramirez' testimony indicates that he experienced difficulty communicating with the responding officers, none of whom were fluent in Spanish.

In addition to the in-court identifications of the defendant by Diaz and William Ramirez, there was other sufficient evidence presented at trial to sustain the defendant's conviction. The three witnesses whose testimony identified the defendant as the individual that had stabbed Diaz all knew and were familiar with the defendant because he lived in the neighborhood and was a regular customer at the market where they worked. Diaz testified that, immediately after the attack, he told Franklin Ramirez that the defendant had stabbed him. Franklin Ramirez testified that, as Diaz was bleeding in the market, he had identified "Espana," the defendant, as his attacker. On March 19, 2008, Diaz gave a written statement to police identifying the defendant as his attacker, and identified the defendant from a photographic array. Further, both Franklin Ramirez and William Ramirez testified that, on February 16, 2008, the defendant entered the market and admitted to stabbing Diaz, stating, "it was me . . . it was me."

It was within the discretion of the jury to believe the foregoing testimony based on all of the evidence. See *State v. Vega,* supra, 128 Conn. App. 27–28; see also *State v. Felder,* 99 Conn. App. 18, 24, 912 A.2d 1054

("[t]he question of [the] identity of a perpetrator of a crime is a question of fact that is within the sole province of the jury to resolve" [internal quotation marks omitted]), cert. denied, 281 Conn. 921, 918 A.2d 273 (2007). The jury reasonably could have concluded that the cumulative force of this evidence established the defendant's guilt beyond a reasonable doubt. Accordingly, we reject the defendant's claim that the evidence was insufficient to sustain his conviction for assault in the first degree.

## II

The defendant also argues that the court erred in permitting testimony by Aaron Romano, an attorney appointed by the court to represent Diaz to ensure that he understood the implications of testifying for the state at the defendant's trial. The defendant argues that Romano's testimony was irrelevant and improperly bolstered Diaz' credibility.[4] We disagree.

---

[4] The defendant argues further that the state failed to demonstrate a "compelling need" for Romano's testimony. Because the defendant failed to raise this argument before the trial court, we do not consider it on appeal. Practice Book § 60-5.

We note, however, that oral argument in this court left unresolved whether the "compelling need" standard for the admission of testimony by a party's attorney would apply to an attorney for a witness or complainant in a criminal case. For purposes of this decision, we need not resolve that issue. Romano was not a prosecutor or defense attorney professionally involved in representing a party in the underlying case. Our Supreme Court has not yet decided whether the "compelling need" test for the admission of testimony by an attorney representing a witness, as opposed to a party, applies in a criminal case. Romano's testimony had no adverse effects on an attorney-client relationship or the judicial process in general. See *State* v. *Peeler*, 265 Conn. 460, 474, 828 A.2d 1216 (2003), cert. denied, 541 U.S. 1029, 124 S. Ct. 2094, 158 L. Ed. 2d 710 (2004). We are, therefore, left to determine the basic question of whether the trial court abused its discretion in allowing such testimony as an evidentiary matter. Given the charge to the jury on credibility; see footnote 6 of this opinion; and the particular circumstances of this case, we do not apply the "compelling need" standard to the court's decision to admit Romano's testimony. However, we do not endorse, in general, the introduction of such testimony, without a hard look at the reason for its admission.

The following additional facts are relevant. In 2008, at the time of the attack on Diaz, Diaz was not a legal resident of the United States. A citizen of the Dominican Republic, Diaz had remained in the United States illegally following the expiration of a temporary visa. Diaz obtained and used the social security number and identification card of a United States citizen named Juan Suarez. Diaz used this stolen identity to commit medical fraud, receiving care worth approximately $259,000, exclusive of the medical care necessitated by the attack on him. During the investigation of the attack, Diaz initially had identified himself to police as Juan Suarez.

During trial, Diaz was questioned and testified about his use of the false identity and his statements to the police concerning the false identity. Romano was appointed by the court to advise Diaz of his rights in light of the criminal liability Diaz could face as a result of his testimony, due to his use of the false identity. Romano negotiated an agreement with the state that provided Diaz with immunity from prosecution and the opportunity to obtain legal resident status in exchange for testifying at the defendant's criminal trial. The agreement was reached before Diaz testified and was admitted into evidence during the trial.

Following Diaz' testimony, the state proffered Romano as a witness. The defendant objected on grounds of relevance and argued that Romano's testimony would improperly bolster Diaz' credibility. The state argued that, when Diaz was questioned about his use of the false identity, he had not been able to explain coherently to the jury what had transpired and that Romano's testimony was relevant because he could articulate the purpose and scope of the immunity agreement. The court ruled that Romano could testify with respect to the immunity agreement, stating: "[Romano] can explain [the agreement]. He can't explain if the witness [Diaz] is going to testify truthfully,

he cannot bolster the credibility of the witness. If [the agreement] comes in as a full exhibit, there's parts of it that I don't understand and [Romano] can explain those parts. . . . And he can testify that he negotiated this agreement on behalf of his client because of the fifth amendment of the constitution and that's it."

"The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence . . . [and its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Alexander*, 95 Conn. App. 154, 159, 895 A.2d 865, cert. denied, 280 Conn. 909, 908 A.2d 539 (2006).

"Within the law of evidence, relevance is a very broad concept. Evidence is relevant if it has any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact *even to a slight degree*, [as] long as it is not prejudicial or merely cumulative." (Emphasis in original; internal quotation marks omitted.) *State* v.

*Mack*, 129 Conn. App. 127, 133, 19 A.3d 689, cert. denied, 302 Conn. 908, 23 A.3d 1245 (2011).

The defendant argues that the court erred in permitting the testimony by Romano because the facts relevant to the immunity agreement, namely, that the state had bargained for Diaz' testimony and that it did not call him as a witness until after the immunity agreement was secured, were elicited via Diaz' own testimony and the entry of the agreement into evidence. The defendant argues that any testimony by Romano was therefore irrelevant.

We are not convinced that the court committed reversible error in admitting the testimony by Romano. Because Diaz was testifying pursuant to the immunity agreement, the jury was entitled to know its terms and the details thereof. Romano gave detailed testimony as to the purpose and conditions of the immunity agreement, which was admitted into evidence. Romano testified that his purpose in representing Diaz was to explain the possible legal ramifications of Diaz' testimony at trial—that he could be prosecuted as a result of his statements admitting to using someone else's name and social security card and staying in the United States after his visa had expired—and that he had sought to minimize any harm to Diaz.[5]

Romano's testimony concerning his appointment to represent Diaz and the details of the immunity agreement was instructive to the jury's understanding of Diaz' presence as a witness and to their evaluation

---

[5] We disagree with the defendant's argument that the "sole purpose" of Romano's testimony was "to cast the seriously impeached complainant as a sympathetic victim who did not even know enough to assure his own rights." Romano testified as to the reason for his appointment as counsel for Diaz. The balance of his testimony was confined to the details of the immunity agreement.

of his credibility.[6] This is especially true in light of the fact that Diaz was examined and cross-examined extensively about his use of the false identity. Accordingly, we conclude that the court did not commit reversible error in permitting testimony by Romano.

The judgment is affirmed.

---

[6] With respect to Diaz' misdeeds, the court instructed the jury: "[T]he witness has admitted essentially [to] using a false name and someone else's social security number to obtain medicine and that is consider[ed] misconduct; however, that evidence is only offered on the issue of the witness' credibility. It's still your duty to determine whether the witness is to be believed wholly, or in part or not at all, [and] you may consider his admissions in weighing on the credibility and give such weight to those admissions as you think is fair and reasonable in determining his credibility." As noted in footnote 5 of this opinion, we reject the defendant's argument that the testimony by Romano "served only to bolster" Diaz' credibility.